**Desiree SIMMONS, on Behalf of Devin SIMMONS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

**No. 94 Civ. 3413(JES).**

United States District Court, S.D. New York.

June 13, 1997.

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L.

Charles E. Binder, Binder & Binder, Hauppauge, NY, for Plaintiff.

Mary Jo White, U.S. Attorney for the Southern District of New York, New York City (Lorraine S. Novinsky, Assistant U.S. Attorney, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1383(c)(3) (1991), Desiree Simmons ("Simmons") filed the instant action on behalf of her infant daughter, Devin Simmons ("plaintiff"), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying plaintiff's application for supplemental security income ("SSI") benefits. Pursuant to Federal Rule of Civil Procedure 12(c), the Commissioner moves for an order affirming her decision, and pursuant to 42 U.S.C. § 405(g) (1991), plaintiff cross-moves for an order remanding the case to the Commissioner for consideration of additional evidence. For the reasons that follow, the Commissioner's motion is granted and plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff Devin Simmons was born on September 29, 1991. *See* Transcript of Administrative Record ("Tr.") at 17. On October 17, 1991, based on newborn screening, plaintiff's treating physician, Dr. Millicent Sutton, was

No. 103–296, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Pub.L. 103–296, the Court deems the complaint amended to substitute Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as defendant.

advised that an analysis of a filter paper specimen on plaintiff was consistent with hemoglobin SC disease. Tr. at 70. On November 23, 1991, Dr. Sutton performed a physical examination of plaintiff which revealed no deficits in her condition. Tr. at 75–76. Furthermore, Dr. Sutton reported plaintiff to be "doing well except for slight nasal congestion." *Id.* On December 4, 1991, the results of a repeat filter paper specimen were reported to be consistent with hemoglobin SC disease. Tr. at 79.

On January 29, 1992, plaintiff applied for SSI benefits noting that her condition was "sickle cell disease." Tr. at 32. The Department of Health and Human Services ("HHS") denied plaintiff's application on May 6, 1992. Tr. at 35. In a request for reconsideration filed July 19, 1992, plaintiff noted that she "has sickle cell disease" and that there were "no symptoms yet." Tr. at 37. Plaintiff's request for reconsideration was denied on September 10, 1992.[2] Tr. at 38.

On October 6, 1992, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas P. Dorsey on May 24, 1993. Tr. at 41. Simmons appeared on plaintiff's behalf with plaintiff present. Tr. at 22. At the hearing, Simmons testified that the basis for plaintiff's disabling condition was the positive test results on the analysis of the filter paper specimens indicating the presence of hemoglobin SC disease. Tr. at 27. Simmons further stated that the positive test results were the only signs that manifested plaintiff's disability, and presently "there's no

change ... she's been acting normal." Tr. at 27.

On July 1, 1993, the ALJ issued a decision denying plaintiff's application for SSI benefits, finding that plaintiff was not disabled because her impairment did "not impose more than a minimal or slight limitation on [her] ability to function in an age-appropriate manner." Tr. at 17. The ALJ noted that the medical records did "not refer to any abnormality, other than the test result, and in particular, did not indicate any crises involving vaso-occlusive or visceral episodes or inappropriate bleeding." Tr. at 18. The ALJ also noted that an assessment completed by plaintiff's treating physician, Dr. Sutton, in August 1992, did "not indicate any restriction upon [her] ability to perform age-appropriate activities, and in particular did not provide for any restriction in the areas of cognitive, communicative, social, motor, or personal/behavior functioning." Tr. at 18. In reaching his decision, the ALJ relied on medical reports from the North Central Bronx Hospital, and from Dr. Sutton.[3]

On July 16, 1993, plaintiff filed a request for review of the ALJ's decision with the Appeals Council, arguing that her "doctor feels that she disable (sic)" and that "the disease is very severe." Tr. at 10. In her request, plaintiff did not state any new information regarding plaintiff's condition or explain how her activities were in any way restricted. On March 18, 1994, the Appeals Council denied plaintiff's request for review on the ground that there was no basis to find that the ALJ's findings and conclusions were

**2.** In both her initial denial and in her Notice of Reconsideration, the Commissioner advised plaintiff of her right to file a new application or an appeal. Tr. 38–39. Moreover, in the explanation section of each notice, the Commissioner again specifically advised plaintiff that if her condition got worse, she should file a new application for supplemental security income benefits. Tr. at 40.

**3.** In a Report dated August 12, 1992, Dr. Sutton noted that plaintiff's treating diagnosis was sickle cell disease—hemoglobin SC. Tr. at 90. Dr. Sutton further noted that plaintiff had no current symptoms, was being treated with penicillin as a prophylaxis, and would be able to attend regular school, but that sickle cell disease has many complications which at any time could possibly

affect her ability to function properly. Tr. at 90–91. Plaintiff was also noted to have fine and gross motor skills, sensory abilities, communications skills, cognitive skills and social and emotional skills. Plaintiff had no transfusions as of that time, and was not experiencing thrombotic crises. Tr. at 91–92.

In an undated note to SSI officials written on North Central Bronx Hospital stationery, Dr. Sutton also wrote that plaintiff's condition is a mild form of sickle cell disease. Tr. at 61. Dr. Sutton cautioned that sickle syndromes are difficult to predict so that the fact that a patient's symptoms were mild during the first two years does not necessarily indicate that her life-long illness will be mild. Tr. at 61–62.

not supported by substantial evidence. Tr. at 6.

After the Appeals Council rendered its decision, it received additional evidence from plaintiff consisting of two letters from the Montefiore Medical Center. Tr. 108–109. The first undated letter stated that plaintiff was "followed in pediatric Hematology Clinic," and that her disease "predisposes her to frequent painful crises and makes her susceptible to bacteria." Tr. at 108. The second letter, dated February 28, 1994, was signed by Dr. Eva Radel, Director of the Pediatric Hematology Division at the Montefiore Medical Center. Dr. Radel noted that plaintiff was "under our care for the treatment of hemoglobin SC disease, a variant of sickle cell anemia," that plaintiff "has frequent episodes of pain in her hands," and that the doctor would be glad to supply any additional information needed. Tr. at 109. By Order dated March 24, 1994, the Commissioner acknowledged receipt of the above additional evidence. Tr. at 5. On March 25, 1994, the Appeals Council denied plaintiff's request, stating that the evidence did not provide a basis to reopen the ALJ's decision. Tr. at 4.

On May 10, 1994, Simmons commenced the instant action on behalf of plaintiff claiming that the Commissioner's decision finding that plaintiff is not disabled is unsupported by substantial evidence and based upon inappropriate legal standards. On March 31, 1995, the Commissioner moved for an order affirming her decision. Thereafter, plaintiff cross-

moved to remand the case for consideration of new and material evidence.[4]

## DISCUSSION

■ Pursuant to the Social Security Act, the Court may order the Commissioner to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). Accordingly, plaintiff must show that her proffered evidence is (1)'new' and not merely cumulative of what is already in the record; (2) material, i.e. it is both relevant to the Simmons' condition during the time period for which benefits were denied and probative; and (3) good cause for her failure to present the evidence earlier. See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).[5]

Plaintiff concedes that she was not disabled as of May 24, 1993, the day the ALJ held plaintiff's hearing. See Pltf.'s Memorandum at 3, 5–6. The only issue left for the Court to resolve is whether plaintiff subsequently became disabled by July 1, 1993, the date the ALJ issued his decision. The Commissioner's regulations specifically provide that a claimant's application for SSI benefits will remain in effect until the Commissioner makes a final determination on an application, or if there is a hearing decision, as here, until the hearing decision is issued. See 20 C.F.R. § 416.330 (1996). Where a claimant does not meet all of the requirements for

4. After the Commissioner moved for judgment on the pleadings, an attorney acting on plaintiff's behalf, but without filing a formal notice of appearance, filed a memorandum of law in opposition to the Commissioner's motion, cross-moved to remand the matter to the Commissioner, and appeared before the Court for Oral Argument. While the Court does not sanction the practice of attorneys submitting briefs without filing a formal notice of appearance, the Court, in the interests of justice, will consider plaintiff's counsel's cross-motion and arguments.

Plaintiff's counsel attaches to its memorandum of law a report dated May 18, 1995, completed by Dr. Radel, which notes that plaintiff has been followed at Montefiore Medical Center in its outpatient service since August 2, 1993, after having been transferred from North Central Bronx Hospital. In August 1993, plaintiff was noted to

have swelling of her fingers. In February 1994, she was experiencing mild painful crises at home about twice a week. In April 1994, she was seen at the Emergency Room for hand-foot syndrome, a form of sickle crises. In October 1994, she had a hordeolum of her right eye. In January 1995, plaintiff was complaining of paresthesia over her hands three to four times a month. By April 1995, plaintiff was experiencing coughing and vomiting daily. See Memorandum Of Law On Behalf of Plaintiff, Exh. A.

5. In order to establish disability, plaintiff must demonstrate that her impairment so limits her ability to function independently, appropriately and effectively in an age-appropriate manner that the impairment and the resulting function limitations are comparable to those that would be found disabling in an adult. See 20 C.F.R. § 416.924 (1996).

eligibility until a period after that for which his or her application was in effect, the claimant must file a new application for benefits. *Id.* Moreover, the Appeals Council will consider new and material evidence only if it relates to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 416.1476 (1996).

■ In this case, plaintiff has offered no evidence bearing upon the period of coverage which contradicts the ALJ's finding that she was not disabled during that claim period. Indeed, plaintiff's evidence, including the materials attached to her memorandum of law, indicates that she did not begin to exhibit symptoms of hemoglobin SC disease until August 1993, more than a month after the ALJ's decision, with more severe symptoms not developing until 1994. There is thus no conceivable merit to plaintiff's contention that the ALJ's decision denying her benefits was not supported by substantial evidence.

■ The only other issue left for the Court to resolve is whether, under such circumstances, the Commissioner breached a duty to plaintiff to advise her of her right to file a new application for benefits. With respect to that issue, the Commissioner does have a regulation which provides that where a claimant submits new evidence to the Appeals Council which does not relate to the period of coverage, the Appeals Council will return the additional evidence with an explanation as to why it did not accept the evidence, and will advise the claimant of his or her right to file a new application. *See* 20 C.F.R. § 416.1476. However, in this case, plaintiff's new evidence was not submitted until after the Appeals Council denied plaintiff's request for review. Therefore, that duty was never triggered. The Commissioner's regulations impose no similar duty where information is submitted after the Appeals Council has rendered its final decision. Thus, the Appeals Council properly construed plaintiff's submission as an application to re-open the ALJ's decision, which it denied.

In any event, it would be particularly inappropriate for the Court to impose the duty plaintiff requests under the facts of this case. Here, the Commissioner twice advised plaintiff in 1992 to file a new application for benefits if her condition worsened. Moreover, as plaintiff's counsel conceded at Oral Argument, he did not advise plaintiff that she could or should file a new application nor to the Court's knowledge has one yet been filed on her behalf.

■ Nor does the Court accept plaintiff's argument, raised for the first time in a supplemental letter brief to the Court, that the Commissioner induced plaintiff through misinformation to not file a new application, and that therefore plaintiff should be able to obtain benefits retroactively by deeming any new application to have been filed as of an earlier date. Quite aside from the merits of her claim of inducement, it is clear that this Court has no jurisdiction to deal with issues relating to a new benefit claim that has not yet even been filed. The Court must await agency resolution of these issues and a motion addressed to that agency's determination. They may not properly be resolved in the context of motions directed to an entirely different benefit claim.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion for an order remanding the case to the Commissioner for consideration of additional evidence is denied. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**